[Sac. No. 2501. In Bank.—March 9, 1920.]

ROY J. YOUNG, as Special Administrator, etc., et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

[1] NEGLIGENCE—KILLING OF MOTORCYCLE RIDER AT RAILROAD CROSS-ING—EVIDENCE—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.— A rider of a motorcycle who attempts to cross the main track of a railroad at a crossing, although his view is obstructed by cars standing on another track, without the slightest effort to stop or look or listen, and without giving any heed to the warning of bells, whistles, or the gesticulations of bystanders, is guilty of contributory negligence as a matter of law.

[2] ID.—PROOF OF CONTRIBUTORY NEGLIGENCE—ERRONEOUS INSTRUC-TION.—An instruction in an action for death that contributory negligence 'is not to be inferred from the evidence offered by the plaintiffs, but is a matter of defense to be proved affirmatively by the defendants, was prejudicial error, where the plaintiffs in opening their case put before the jury all the elements that

1. Failure to stop, look, and listen at railroad as negligence per se, note, 1 A. L. R. 203.

CLXXXII Cal.—24

went to disclose that deceased was guilty of contributory negligence and the evidence of the defendants did not materially add thereto, since the jury might well have believed from such instruction that in the opinion of the court either the plaintiff's evidence did not show contributory negligence or that they should wholly disregard the chain of circumstances in determining whether or not there was contributory negligence.

[3] ID.—CROSSING OF RAILROAD TRACK—OBSTRUCTION OF VIEW—EXCUSE FROM LOOKING—ERRONEOUS INSTRUCTION.—In an action for the death of the rider of a motorcycle, who was killed at a railroad crossing while attempting to cross the main track ahead of a moving caboose, after he had crossed another track upon which boxcars were standing obstructing his view of the main track, where the evidence showed that upon passing such boxcars there was an unobstructed view of the main track, an instruction that if the defendants suffered to remain on their tracks boxcars so as to exclude to a traveler a view of its track when about to go upon such track, the traveler was excused from looking, was erroneous, since such instruction might well have been construed as excusing the deceased from looking.

[4] ID. — KNOWLEDGE OF APPROACHING TRAIN — CROSSING WITHOUT STOPPING—IMPROPER INSTRUCTION.—In such action an instruction which meant under the facts in the case that if the deceased saw the smoke of the approaching engine and believed that the smoke was at the front end of the train instead of in the rear, the jury was to determine whether he was negligent in passing the crossing without stopping, was without justification, for if he actually saw a train approaching, it was negligence for him to proceed in front of it even if he believed the smoke was at the front of the train.

[5] ID.—EXCUSE FROM DUTY TO STOP, LOOK, AND LISTEN—ERRONEOUS INSTRUCTION.—An instruction in such action that failure to stop, look, and listen for a train is not negligence where by the acts of those managing the train, or parts of the train at the crossing, appearances are produced which would cause an ordinarily prudent person to refrain from exercising such precautions, was erroneous, since the deceased was under the obligation to look and listen, and if by reason of the obstruction caused by the boxcars he could not see or hear without stopping, it was his duty to do so.

[6] ID.—LAST CLEAR CHANCE DOCTRINE—MISLEADING INSTRUCTION—LACK OF EVIDENCE.—In such action, an instruction that if the circumstances were such as to have led an ordinarily prudent person, situated as were those in charge of the train, to believe that the motorcycle rider was in the act of crossing the track in front of the caboose, and "through fear, excitement, or loss of self-control"

could not stop, the plaintiffs were entitled to recover, notwith-
standing the rider was negligent in attempting to cross ahead of
the train, was misleading, in the absence of evidence justifying
the conclusion that the deceased was acting under fear or excite-
ment or had lost self-control before the accident was unavoidable.

[7] RAILROAD — PERIL FROM APPROACHING TRAIN — APPLICABILITY OF
DOCTRINE TO TRAIN EMPLOYEES.—Under the last clear chance
doctrine, the peril of a party from being struck by an approach-
ing train which calls upon the train employees to act must be an
actual one from which the imperiled party cannot escape by the
exercise of ordinary care, for until that point is reached, the
doctrine has no application.

[8] NEGLIGENCE—ACTION FOR DEATH—ABSENCE OF FLAGMAN AT CROSS-
ING—PLEADING—ERRONEOUS INSTRUCTION.—In an action for death
of a rider of a motorcycle from being struck by a train at a
railroad crossing, an instruction that it was the duty of the
railroad to have someone stationed at the crossing to give proper
warnings was erroneous, in the absence of any allegation in the
complaint making the failure to have a flagman at the crossing
a basis of the claim of negligence.

[9] APPEAL—UNCERTAINTY AS TO THEORY OF VERDICT—ERRONEOUS IN-
STRUCTIONS—REVERSAL OF JUDGMENT.—Where on appeal from a
judgment in an action against a railroad company and certain
of its employees for damages for the death of the rider of a
motorcycle from being struck by a train at a crossing, it is
impossible to determine whether the jury awarded the verdict on
the theory that the deceased was not guilty of contributory negli-
gence or upon the theory of the applicability of the last clear
chance doctrine, erroneous instructions on the issue of contributory
negligence and on the last clear chance doctrine require a reversal
of the judgment, under section 4½ of article VI of the con-
stitution.

[10] ID. — INSTRUCTION — CONTRIBUTORY   NEGLIGENCE — BURDEN   OF
PROOF.—An instruction that "unless it may be inferred" from the
evidence offered by the plaintiffs, contributory negligence is a
matter of defense to be proved affirmatively by the defend-
ants, is a correct statement of the law.   (On denial of rehearing.)

[11] ID.—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW—NONSUB-
MISSION TO JURY.—In an action for death, the question of con-

---

7.   Origin, function, and mode of operation of doctrine of last clear
chance, note, 55 L. R. A. 418.

Doctrine of last clear chance as affected by question whether
negligence of plaintiff or deceased and of defendant was concurrent,
notes, 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19
L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379.

tributory negligence should not be submitted to the jury, where the deceased is guilty of contributory negligence as a matter of law.' (On denial of rehearing.)

APPEAL from a judgment of the Superior Court of Yolo County. H. D. Burroughs, Judge Presiding. Reversed.

The facts are stated' in the opinion of the court.

Devlin & Devlin and Hudson Grant for Appellants.

George Clark and Black & Clark for Respondents.

WILBUR, J.—This action was brought by the father and mother of Fred-C. Bluhm to recover damages for the death of their son. The father has died and the special administrator of his estate has been substituted.

Fred C. Bluhm, while riding a motorcycle along Main Street, in the city of Woodland, across the railway track of the defendant company, was struck by a caboose, which was being pushed by an engine, and killed. Joined with the defendant company were G. E. Waite, conductor; W. H. Jones, engineer, and G. C. Conley and B. C. Neibling, brakemen, of the train. The case was tried by a jury and a verdict rendered against all of the defendants. As a part of the plaintiffs' case a diagram of the scene of the accident was introduced in evidence. From this it appears that crossing Main Street at and near the place of the accident were two tracks of the railway company, one the main-line track and another a passing track. In approaching the point of collision the deceased first crossed the passing track and then the main track. At the time of the accident the train involved in the accident was being broken up and a part thereof was standing on the passing track. The engine and caboose were on the main track. The complaint alleges that the defendants were negligent in allowing a portion of the train to stand upon the passing track in such manner that a portion thereof projected into and partially crossed Main Street "so that the northerly end of said train of cars extended from the south side of said Main Street into the said Main Street a distance of about fifteen feet," thereby obscuring the view of a person traveling westerly on Main Street and preventing such person from observing the ap-

proach of cars "being propelled in front of an engine, in the event an engine shoving cars was being run on said main-line track in a northerly direction toward such railroad crossing, and would be misled and deceived into believing that no cars were being propelled by or shoved by said engine." That immediately prior to the collision the engine of the defendant company was pushing a caboose northward along the track, the engine being fronted north and the caboose in front thereof; that the deceased had no knowledge or notice of the fact that the defendants were engaged in running an engine propelling or shoving a caboose in front of it in a northerly direction along said main-line track, and that by reason of the location of said portions of said train of cars on said passing track he was misled and deceived into believing that he could go safely over said crossing. Immediately before the trial began plaintiffs amended their complaint to add a count charging negligence under the last clear chance doctrine, in which they alleged the same situation with reference to the cars and tracks. It was alleged "that as he passed the northerly end of said portion of said train of cars so placed and allowed so to remain on said passing track, he for the first time discovered that the defendants were engaged in running an engine propelling and shoving a caboose in front of it in a northerly direction along said main-line track, toward the point where he was about to pass over said main-line track, and that he then for the first time discovered the peril in which he would be by reason of proceeding across said main-line track; that Fred C. Bluhm so discovered said engine and caboose immediately upon his passing the said northerly end of said cars so placed and allowed to remain on said passing track, but that at the time of becoming aware of the approach of said engine and caboose it was then impossible for him to avoid continuing westerly over said main-line track, and that he did continue westerly to the said main-line track upon his said motorcycle; . . . that the individual defendants herein who were engaged in the management of said engine and caboose . . . knew that the said Fred C. Bluhm was about to go upon said main-line track . . . and could not avoid so doing; that they then became aware of the peril in which he was situated, and that if he went upon the said main-line track he would be killed or suffer great bodily in-

jury, if the engine or caboose were not stopped or the speed thereof slackened immediately; that the defendants herein negligently and carelessly, after they so became aware of the said danger . . . failed to stop said engine and caboose, or to slacken the speed thereof immediately,'' and as the result thereof deceased was killed. The distance between the passing track and the main track at the point of collision was between thirteen and fourteen feet.

Plaintiffs in their main case called as witnesses the engineer and brakeman riding on the right-hand side of the engine and caboose, respectively, at the time of the accident; a witness who was following immediately behind the deceased and saw the collision, and other witnesses, concerning the various details regarding the circumstances of the accident. These witnesses testified, among other things, that the deceased stopped for a moment's conversation at a point about 150 feet east of the main line of the defendant railway company; that at the time he stopped and conversed with one of the witnesses a stationary electric bell at the crossing was ringing continuously because of the fact that the engine and caboose were on the track south of the crossing at a point sufficiently near to cause the automatic electric crossing bell to ring; that during all of this time the automatic bell on the engine was ringing; that the engine stopped at points five hundred feet south of the crossing and two hundred feet south of the crossing, and that on starting forward each time two blasts of the whistle were blown; that the engine and caboose were approaching the crossing at a speed of from four to eight miles an hour, and that the deceased upon starting his machine to the point of crossing moved slowly to the point of the accident at a speed of from four to six miles an hour; that the view of the main-line track upon which the caboose and engine were approaching was obscured by a line of cars on the passing track which projected into the street to a point variously estimated at eight or ten feet north of the south curb line of the street to a point within eight or ten feet of the Northern Electric track which ran along Main Street in an easterly and westerly direction a few feet north of the center line of said Main Street; that, although the view of the main track was thus obscured, a witness fifty feet in the rear of the deceased saw the smoke from the approaching locomotive and

shouted twice to the deceased, warning him of his danger, telling him that he would be killed if he did not look out; that in addition to this warning two men standing near the stationary electric bell on the easterly side of the main-line track in Main Street and within a few feet of the deceased waved frantically and shouted at the deceased to warn him of his danger; that a witness, Conley, a brakeman, riding on the right-hand rear step of the caboose, as soon as he saw the deceased approaching yelled at him and waved for him to stop, and immediately gave the emergency signal to the engineer; that at that time the deceased was upon the passing track, which was about thirteen feet from the main-line track upon which the caboose was approaching; that the engineer was constantly observing the track and the brakeman on the rear of the caboose for the purpose of safeguarding those approaching on the highway; that he saw the frantic gestures of the man near the stationary electric bell, apparently trying to stop someone approaching on the highway, and that immediately and without waiting for such person to become visible he applied the emergency brakes; that he saw the signal of the brakeman for the emergency brakes, but had already applied the brakes; that the deceased moved forward along Main Street toward the point of collision without looking to the right or the left or in any way indicating that he saw or had knowledge of the approaching train; that when he was upon the track in front of the caboose, apparently in sudden fright, he leaped from his motorcycle in front of the caboose, the motorcycle passed on and cleared the caboose, falling clear of the track, but deceased fell and was run over by the trucks on the left side of the caboose. From this evidence it is justly inferable that the deceased, without the slightest effort to stop or look or listen, approached the crossing, although knowing that the track was there, utterly heedless of the warning bells and whistle and the gesticulations of the bystanders, and the cries of those who sought to warn him, and the warning shouted at him by the brakeman, who must have been only a few feet from him. [1] From this evidence it is not only apparent that the jury would have been justified in finding the deceased guilty of contributory negligence, but that he was guilty of contributory negligence as a matter of law. The court, however, instructed the jury as follows:

"Contributory negligence, is such an act or omission on the part of the decedent, amounting to want of ordinary care, as, concurring and co-operating with the negligence of the defendants, was the proximate cause of the injury complained of. Nor is it to be inferred from the evidence offered by the plaintiffs; such negligence is a matter of defense to be proved affirmatively by the defendants; and hence the burden of proof of contributory negligence is on the defendants." [2] It is difficult to appraise the effect upon the jury of the above instruction concerning contributory negligence. The plaintiffs in opening their case put before the jury all the elements that went to disclose that the deceased was guilty of contributory negligence, and while the defendants did introduce some evidence in addition to that offered by the plaintiffs, it may be said in general that such evidence did not add materially to the situation as disclosed by the plaintiff's evidence so far as contributory negligence is concerned. The jury might well have believed from this instruction that in the opinion of the court either the plaintiff's evidence did not show contributory negligence, or that they must wholly disregard this chain of circumstances in determining whether or not there was contributory negligence. Of course, there are other instructions upon the question of negligence and contributory negligence and upon the doctrine of the last clear chance. But before considering them it should be observed that the verdict returned by the jury was against *all* the defendants. The defendants not only included the brakeman and engineer, who saw the deceased approaching the track, but also the conductor and another brakeman who did not observe and did not see the deceased at any time before he was run over and killed. If the jury based its verdict upon the last clear chance doctrine, it could not justly have found a verdict against those employees who knew nothing of the peril of the deceased. It would, therefore, appear that the jury's verdict was upon the theory that the deceased was not guilty of contributory negligence. The jury were further instructed: "If you believe from the evidence that the defendants at the crossing where the accident is alleged to have occurred suffered to remain on their tracks boxcars so as to exclude to a traveler a view of its track when about to go upon such track, the traveler is excused

from looking, and the failure to look cannot be imputed to
him as negligence, although it throws upon him additional
care in listening and to take such other precautions for his
safety as may be reasonably necessary.''   Now, with this in-
struction it should be observed that it is unquestioned that
during a part of the time when the deceased was approach-
ing the main-line track his view was obscured so that he
could not see the approaching engine and caboose.   It is
also true that as he approached the main-line track his view
of that track to the south constantly increased.   The extent
of that view depended upon his location with reference to
the end of the standing boxcar.   If, however, we assume
that he crossed the passing track as near to the standing
car as he could, he had an opportunity the moment that he
passed the corner of this car to look down the track toward
the approaching engine and caboose, with an unrestricted
view for nearly three miles.   [3]   The phrase used in the
instruction, ''when about to go upon such track,'' in view
of the conceded location of the tracks and the opportunity
to observe, after passing the standing car, might well have
been construed by the jury as altogether excusing the de-
ceased from looking, while the law required the deceased to
look if after passing the obstruction he could by looking have
seen the approaching train, and the court elsewhere so in-
structed the jury as follows: ''If you find from the evi-
dence that when the deceased passed the north end of the
boxcar going toward the main-line track upon which he was
killed, there was a space between the passing track and the
main-line track, from which he could, under the evidence in
the case, in safety have seen the approaching engine and
caboose, it was his duty to look and listen from this point
of safety, and if he failed to do so, but passed on to his
death, he was guilty of contributory negligence.''   As was
said by the district court of appeal in its first decision
herein: ''There can be no possible doubt under the evidence
that there was such a space as is therein indicated.   The
virtual effect of the instruction was, therefore, that if the
jury believed Bluhm failed to look for the train, he was
guilty of contributory negligence.''   Again, the jury were in-
structed as follows: ''If you believe from the evidence that
the deceased Fred Bluhm, while approaching the crossing
to a point that was reasonably suitable and proper for ascer-

taining whether cars were approaching, and while he was yet in a position of safety, there was an engine moving upon the main line, but under the facts in the case he then had reasonable grounds for believing the engine was not approaching, or, if approaching, it was not near to the crossing, and was not shoving the caboose near to the crossing, then it is a question for you to determine whether he was negligent in passing the crossing track without stopping.'' This instruction simply means, under the facts in the case, that if the deceased saw the smoke of the approaching engine and believed that the smoke was at the front end of the approaching train instead of in the middle, as it appears in fact it was, the jury was to determine whether it was negligence for him to continue without stopping to make further observation. [4] There is no justification for this instruction. If, in addition to the warning given by the track itself, by the ringing of the bell and the blowing of the whistle, he actually saw a train approaching, it was negligence for him to proceed and attempt to cross in front of the approaching train, even if he believed that the smoke was in the front of it. He was bound to look and listen, and, if necessary, to stop, upon approaching the track without knowing that a train was approaching, and that obligation was increased rather than diminished by his knowledge that in fact a train was approaching.

The jury was further instructed: ''You are instructed that the rule which requires a person on a highway to stop, look, and listen for an approaching train, where the view of the track is obstructed, is not an unvarying one applicable to every set of circumstances. Contributory negligence cannot be imputed to one on account of his failure to stop, look, and listen for a train, or a portion of a train approaching the crossing, if, by the acts of those managing the train, or parts of the train at the crossing, appearances are produced which would cause an ordinarily prudent person to refrain from exercising the precaution to stop, look, and listen.'' This could only mean, under the circumstances, that the deceased was not required to stop, look, and listen if in the opinion of the jury the appearance of the boxcar upon the passing track was sufficient in their judgment to excuse him from the burden of the rule. [5] This is not the law. The deceased was under the obligation

to look and listen, and if by reason of the obstruction caused by the boxcar he could not see or hear without stopping in a place of safety so to do, it was his duty to do so.

We have so far discussed the case from the standpoint of the plaintiff's testimony for the purpose of determining whether or not the instruction to the effect that contributory negligence could not be inferred from the plaintiff's testimony prejudiced the appellants. It is apparent from what has been said that the above-quoted instructions upon the subject of contributory negligence were erroneous and require a reversal of the case.

The respondents contend, however, that the defendants were liable on the last clear chance doctrine. It is true that under this doctrine the contributory negligence of the deceased would cease to be a factor as soon as the situation demanded the application of the rule, which is founded upon the theory that the injured person is guilty of negligence. For the purpose of this appeal it is sufficient to say that it is impossible to determine whether the jury awarded the verdict on the theory that the deceased was not guilty of contributory negligence, or upon the theory that the last clear chance doctrine applied, but that the fact that some of the defendants against whom the verdict was found were not liable in any event, under that doctrine, would indicate that the former was the basis of the jury's verdict. Notwithstanding the necessity of a new trial, we deem it unnecessary to critically examine the instruction of the court on the last clear chance doctrine, for the reason that the doctrine is well settled and that instructions applicable to the facts of this case may readily be given. The instruction is criticised by the appellants "because it permitted the jury to find the defendants' negligence under the rule if on the facts the trainmen could have seen Bluhm in time to save him, whereas the law is that they must have actually seen him or known he was there and have been guilty of an independent and a new negligence thereafter." It is doubtful whether the instruction is susceptible of the interpretation placed upon it by the appellants. Without quoting the entire instruction, it provides: "That if . . . those in charge of the engine and caboose discovered the plaintiff's presence on the highway . . . and the circumstances were such as to lead an ordinarily prudent person situated as

those were in charge of the engine and caboose to believe that the deceased was in the act of crossing the track in front of the caboose, and through fear, excitement or loss of self-control, could not stop and would come in collision with the caboose, if it proceeded, and that those in charge of the engine and caboose, after seeing and realizing such a situation of the deceased, failed to stop the engine and caboose, although they could by the exercise of ordinary care have stopped the same . . . then in that event the jury will find for the plaintiffs, notwithstanding they believe that the deceased was originally wanting in ordinary care in failing to ascertain that the engine and caboose were coming, and in attempting to cross the main-line track.'' **[6]** This instruction is misleading, for the reason that there is no evidence to justify the conclusion that the deceased was acting under fear or excitement or had lost self-control until the moment that he leaped from his motorcycle or was knocked therefrom, at which time the accident was unavoidable. The only evidence observable by the train employees was that the deceased was proceeding heedlessly forward. The last clear chance doctrine was not applicable until he arrived at such a point as to be in peril, and this was the point where he could no longer escape injury by exercising ordinary care. Until he reached that point the train employees had a right to rely upon his continuing obligation to observe the approach of the train. The evidence does not clearly indicate this point, for the reason that it does not show within what distance the motorcycle, under the circumstances, could have been stopped. It is important that this should be made clear to the jury, for the reason that, in one sense, every person approaching a crossing at a speed which would bring him in collision with a moving train at the crossing is in danger and certain to be injured unless he accelerates his speed, slows down or stops, or the engineer does so. **[7]** Under the last clear chance doctrine the peril which calls upon the train employees to act must be an actual one from which the imperiled party cannot escape by the exercise of ordinary care. Until the deceased reached the point from which he could not escape injury by the exercise of ordinary care, either by stopping or accelerating his pace, the doctrine of the last clear chance does not apply. The rule is well stated in the following quotation

from *French* v. *Grand Trunk Ry.*, 76 Vt. 441, [58 Atl. 722]: "It is true that when a traveler has reached a point where he cannot help himself—cannot extricate himself—and vigilance on his part will not avert the injury, his negligence in reaching that position becomes the condition, and not the proximate cause, of the injury, and will not preclude a recovery; but it is equally true that if a traveler, when he reaches the point of collision, is in a situation to help himself, and, by a vigilant use of his eyes, ears, and physical strength, to extricate himself and avoid injury, his negligence at that point will prevent a recovery, notwithstanding the fact that the trainmen could have stopped the train in season to have avoided injuring him. In such a case the negligence of the plaintiff is concurrent with the negligence of the defendant, and the negligence of each is operative at the time of the accident. When the negligence is concurrent and operative at the time of the collision, and contributes to it, there can be no recovery."

We have recently had before us in *Basham* v. *Southern Pacific Co.*, 176 Cal. 320, [168 Pac. 359], the doctrine of the last clear chance as applied to a crossing case, where the injured party was approaching the track at right angles. It was there said: "The 'last clear chance' doctrine can have no possible application, unless there was evidence tending to show that the fireman neglected to take steps which due care would have required, when he saw the team and wagon in a position which would have indicated to a reasonable man that Coffey was already in danger, or was immediately about to enter the danger zone."

The court gave the following instruction: "The jury is instructed that if under the circumstances existing at a crossing proper warning of the danger of the approach of trains cannot be given unless someone is stationed thereat to give warnings, it is the duty of a railroad company making use of the crossing to have someone stationed at the crossing to give such warnings, or to approach such crossing with the engine under such control that it can be stopped in time to avoid injury." [8] Aside from the proposition that this instruction submitted to the jury, without any standard for the determination of the same, the question of what constituted "proper warning" of the danger of the approaching train, the instruction was objectionable, because the com-

plaint did not allege the failure to have a flagman at the crossing as a basis of the claim of negligence. The instruction should not have been given.

We do not deem it necessary to discuss the other instructions complained of by appellants, nor to set out other portions of the evidence, for the reason that the rules applying to accidents at railway crossings are so well settled that on a new trial the court should have no difficulty in correctly instructing the jury. We do not wish to be considered as either approving or disapproving of the instructions that are not herein mentioned. We have not overlooked the fact that the jury is the exclusive judge of the facts and can disbelieve the testimony of any witness, and that if substantial evidence supports the verdict, where the evidence is conflicting the verdict of the jury must stand. Our discussion of the evidence is for the purpose of making manifest the prejudicial character of the erroneous instructions given by the court.

As to the objection that the complaint does not state that the deceased was an adult son, the evidence clearly shows that fact, and the complaint can be amended in the lower court. We, therefore, deem it unnecessary to give further consideration to that question.

[9] In view of the suggestion that under section 4½ of article VI of the constitution, the judgment might be affirmed on the theory that an examination of the entire record leads to the conclusion that the errors complained of have not resulted in a miscarriage of justice, we deem it proper to state that we are entirely satisfied from such examination that this court cannot say that there has been no miscarriage of justice. For instance, defendant Conley testified that as soon as he saw the deceased he gave the emergency signal. Defendant Jones, the engineer, testified that he applied the emergency brakes before he received the signal or saw the deceased. Defendant Neibling testified that he saw nothing of the accident until the motorcycle appeared on the far side of the train, and that the emergency brake had been applied before that time. Defendant Waite, the conductor, testified that he was not on the engine or caboose at the time of the accident.

If this testimony is true, no verdict should have been rendered against any of these defendants on the last clear

chance doctrine, or on the theory that they were guilty of negligence; nor should a verdict have been rendered against the defendant company.   The question of whether or not this evidence was true, and, where there was contradictory circumstantial evidence, which should be accepted by the jury, was entirely a matter for the trial court and jury; nor is it a matter for consideration that another jury upon a new trial might, upon such conflicting evidence and proper instructions, render a verdict based on the last clear chance doctrine favorable to the plaintiffs.   Furthermore, the fact that a verdict was returned against defendants Waite and Neibling, who neither saw the peril of the deceased nor had anything to do with the instrumentalities by which the train was or could be stopped, is a clear indication that the present verdict was not rendered upon the last clear chance doctrine.   If it be conceded that there is sufficient evidence upon which the jury might have based a verdict against some of the defendants on that doctrine, it is equally apparent that as to others such a verdict could not properly be rendered.   It cannot, therefore, be said from the record that this doctrine was the basis of the jury's verdict against all the defendants, and, if not, it cannot be said by this court to be the basis of their verdict against any one of the defendants.   Such a conclusion would be in direct conflict with the verdict of the jury, which includes all, and hence implies a sort of negligence in which all participated, and, therefore, a sort to which contributory negligence is a complete defense.

The judgment is reversed.

Lennon, J., Shaw, J., and Melvin, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment and in what is said in the main opinion on the question of contributory negligence, and the instructions given the jury thereon.   I am not in entire accord with all that is said in the opinion in regard to the last clear chance doctrine, and believe that the instruction on that question was substantially correct and not rendered prejudicially misleading by the use of the words, "through fear, excitement, or loss of self-control."   I am further of the opinion that there was sufficient evidence to sustain a verdict

based on the last clear chance doctrine. To my mind, however, it cannot fairly be held that the evidence was such as to *require* a verdict for plaintiff on that ground, or, in other words, that the evidence was such that defendants are liable under said doctrine as *matter of law*. This being so, a reversal cannot be avoided, for it is impossible to know upon what theory the verdict was rendered, or that the jury ever concluded that the facts existed which would have warranted a verdict under the last clear chance doctrine.

OLNEY, J., Dissenting.—I dissent on the ground that while the statement in the first instruction discussed in the main opinion, ''Nor is it [contributory negligence] to be inferred from the evidence offered by the plaintiff,'' is erroneous, so palpably so as to make it probable that it was given wholly by inadvertence, and while, in fact, the decedent was plainly guilty of contributory negligence and the jury should have been so instructed, yet the facts of the case are such as to show unmistakably that the verdict was a just one under the last clear chance rule, and to make it evident that the jury, if there is any presumption that they were reasoning beings and acted as such, reached their verdict because of the liability of the defendants under that rule without being affected by the issue of contributory negligence which was erroneously submitted to them. More than this, I do not see how it is possible upon the facts of this case to say truly that the errors relied upon to justify the reversal, of which those concerning the issue of contributory negligence are alone substantial, ''resulted in a miscarriage of justice'' as required by section 4½ of article VI of our constitution. The verdict certainly cannot be said to be an unjust one. If the facts be not such as to require a verdict for the plaintiff as a matter of law, and in my judgment they at least closely approach so doing, at least they amply justify such a verdict and destroy the possibility of its being properly deemed ''a miscarriage of justice.''

The salient facts are practically without dispute. The decedent, Bluhm, was coming along the street on his motorcycle approaching the crossing in an utterly heedless and therefore perilous fashion. Under these circumstances no recovery could be had for his death unless three things appeared, viz.: (1) That the train crew observed and realized

his peril; (2) that the train crew did not act with the promptness which such a situation reasonably demanded of them; and (3) that if they had so acted, the accident would have been avoided. On the other hand, if these things did appear, the plaintiff was entitled to recover. The evidence both for the plaintiff and the defendants shows unmistakably that they did in fact exist.

First, as to the train crew observing and realizing the decedent's peril. The decedent was killed by being struck by a caboose which was being pushed by a locomotive. As the caboose was being so backed one of the brakemen, the defendant Conley, was stationed on the steps of the forward platform of the caboose, that is, the platform that was forward as the caboose was then being moved, to direct and control the movement of the train and to look out for any danger. Before the decedent came in sight and before the train reached the street, both Conley and the engineer, the defendant Jones, observed a bystander on the sidewalk who, in Conley's language, was "making all kinds of demonstration. It seemed as though he was motioning to a fellow going across the track, you know—stopping him that way, and then he grabbed his hat and motioned and waived it." By the actions of this bystander Conley and the engineer must both have realized the possibility of an impending danger, and must have been mentally prepared for the peril which immediately after developed within their observation when Bluhm come into view. So forewarned, their natural and almost inevitable mental reaction when Bluhm did come into view was to realize this peril. That there was, in fact, such realization appears from Conley's testimony, which is that when he first saw Bluhm he "hollered" and waved at him and gave the emergency stop signal to the engineer. From these actions of Conley's there is but one possible conclusion, and that is that he observed and realized that Bluhm was in peril.

Second, as to the train crew not acting with the promptness which Bluhm's observed and realized peril reasonably demanded of them. It needs no argument to establish the proposition that it was the duty of the train crew, upon observing and realizing Bluhm's peril, promptly to stop the train. The testimony, however, leaves no doubt that they did not do so. The engineer Jones testified for the defend-

CLXXXII Cal.—25

ant that the train could be stopped in forty feet. It is well-nigh incredible that a freight engine with only a light caboose attached, traveling a little faster than a fast walk, and moving on a slight upgrade such as existed at the place of accident, could not be stopped in much less than forty feet. But however this may be, there can be no disputing the fact that the train was stopped only after it had proceeded seventy-five or eighty feet from the point where it first struck Bluhm. This distance, of course, is less than the distance through which the train moved after Bluhm's peril was observed by the train crew, since by all the testimony this was observed before Bluhm was struck. The following facts are those which conclusively show the movement of the train through seventy-five or eighty feet after striking Bluhm. When Bluhm was struck he was eight or ten feet south of the tracks of an electric road which runs along the street on which he was riding and crosses the steam railroad tracks. The train was moving north and when it was finally stopped the gangway between the engine and its tender was immediately over the electric tracks. The engine was moving forward so that the whole length of the engine as far as the gangway had crossed the electric tracks. It necessarily follows from these facts that after striking Bluhm the train moved through the distance from the point of contact to the electric tracks, some eight or ten feet, plus the length of the caboose, which it was testified by the defendants' witnesses was something over thirty feet, plus the length of the engine without the tender, which was testified by the defendants' witnesses to be about forty feet. The sum of these distances is seventy-eight or eighty feet, or almost twice that within which, according to the testimony of the engineer, the train could have been stopped. I can see but one reasonable conclusion from these facts, and that is that the train was not in fact stopped with the promptness which the situation of observed peril reasonably demanded.

Third, as to the fact that if the train had been stopped with reasonable promptness the accident would have been avoided. This is shown conclusively by the fact that a very slight checking of the speed of the train would have avoided the accident. Bluhm was struck by the far-side of the platform, that is, he was almost across the track and out of danger. In fact, if he had remained on his motorcycle he

probably would not have been struck at all, for the motor-cycle was not hit but went on completely across and was there picked up uninjured.   Just as the caboose was almost upon Bluhm he was observed to throw up his hands and fall off his wheel, and it was due to his falling off, probably caused by fright at his observing the caboose so close upon him, that he was struck.

The foregoing facts appear so plainly in the evidence and the conclusion to which they lead is so plain that, as I have said, it seems evident that it was because of these facts, and not because of any erroneous view as to the decedent's contributory negligence, that the jury returned the verdict which they did.   That verdict cannot be said to be a miscarriage of justice, and the errors dwelt upon in the main opinion seem to me to come fairly within the remedial amendment mentioned of our constitution.

What I have said does not apply to the members of the train crew other than the brakeman Conley and the engineer.   The other members of the crew were not shown to have had any connection with the failure to stop the train promptly on Bluhm's peril being observed, and the judgment as to them is properly reversed.

Lawlor, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on April 7, 1920:

THE COURT.—In a petition for rehearing it is stated that the learned trial judge insists that no such instruction on contributory negligence as the one first discussed in the opinion was ever given, that instead of the words, "nor is it to be inferred," the instruction actually given commenced with the words, "unless it may be inferred." **[10]**   So changed, the instruction would be a correct statement of the law.   The settled record on appeal is, in the light of this statement, incorrect, but even if the record in this behalf could now be corrected to show the truth, it would make no difference in the result.   **[11]**   The gist of the opinion in this matter is that the question of contributory negligence should not have been submitted to the jury, the deceased

being clearly guilty of contributory negligence as a matter of law. There were several instructions on the question of contributory negligence and that question was submitted to the jury.

The application for a rehearing is denied.

Angellotti, C. J., Shaw, J., Wilbur, J., and Kerrigan, J., *pro tem.*, concurred.