BUBOLTZ, Respondent, v. CHICAGO, M. & ST. P. RY. CO.,
Appellant.

(199 N. W. 782.)

(File No. 5162.   Opinion filed July 19, 1924.)

1. **Railroads—Cities—Municipal Corporations—Ordinances—Damages
—Ordinance Limiting Speed Held Admissible.**

City ordinance limiting speed of trains held admissible in
action for damages to truck from train, where evidence estab-
lished speed in excess of that fixed.

2. **Negligence—Contributory Negligence—Jury—Contributory Negli-
gence Question for Jury.**

Where evidence of contributory negligence is such that dif-
ferent minds may reasonably draw different conclusions, ques-
tion is for jury; but, if such that ordinarily intelligent, reason-
able men would not and ought not believe plaintiff was acting
as ordinarily prudent person, question is for court.

3. **Railroads—Automobiles — Contributory Negligence — Automobile
Driver Must Look and Listen.**

Automobile driver approaching tracks is duty bound to look
and listen where same would be effective, and failure to do
so.is contributory negligence as matter of law.

4. **Railroads—Evidence — Railroad Crossings — Contributory Negli-
gence—Truck Driver at Crossing Held Negligent.**

Driver of motor truck held guilty of contributory negligence
as matter of law in attempting to pass over a dangerous cross-
ing without stopping for an approaching train, resulting in
damages to truck.

Appeal from Circuit Court, Minnehaha County; Hon. L. L.
Fleeger, Judge.

Action by Albert Buboltz against the Chicago, Milwaukee &
St. Paul Railway Company. From a judgment for plaintiff and
order denying new trial, defendant appeals. Judgment and order
reversed.

*Ed. L. Grantham* and *H. O. Hepperle,* both of Aberdeen, and
*T. M. Bailey,* of Sioux Falls, for Appellant.

*Mundt & Mundt,* of Sioux. Falls, for Respondent.

(2) and (4)   To points two and four of the opinion, Appellant cited: N. Y. Ry. v. Tripp, 220 Fed. 286; Braumer v. Pa. Ry., 179 Fed. 577; Young v. Southern Pacific, (Cal.) 190 Pac. 36; Benedict v. Hines, (Wash.) 188 Pac. 512; Westerkamp. v. C. B. & Q. Ry., 92 Pac. 688; Ry. Co. v. Elliott, 28 Ohio State 340; Young v. C. R. I. & P. Ry., 57 Kan. 144, 45 Pac. 583; Anderson v. Great Northern, (Minn.) 179 N. W. 687; Stafford v. Chippewa Valley Electric, (Wis.) 85 N. W. 1036; Powers v. Iowa Central, (Iowa) 136 N. W. 1049; Rollins v. C. M. & St. P. Ry., 139 Fed. 639; C. & N. W. Ry. v. Andrews, 130 Fed. 65; C. St. P. M. & O. Ry. v. Rossow, 117 Fed. 491; Olds v. Hines, (Ore.) 188 Pac. 716; N. Y. C. & H. Ry. Co., v. Maidmen, 168 Fed. 577; C. M. & St. P. v. Bennett, 181 Fed. 799; Young v. Southern Pacific, (Cal.) 190 Pac. 36.

Respondent cited: Blumenthal v. Boston & M. R. Co., 97 Me. 255, 54 Atl. 747; Gipson v. Southern R. Co., 140 Fed. 410; Hoffman v. Peoria B. & Q. Traction Co., 164 Ill. App. 270; Arkansas C. R. Co. v. Williams, 99 Ark. 167, 137 S. W. 828; St. Louis & S. F. R. Co. v. Wyatt, 79 Ark. 241, 96 S. W. 376; Loftus v. Pacific Electric R. Co., 166 Cal. 464, 137 Pac. 34; Zibbell v. Southern Pac. Co., 160 Cal. 237, 116 Pac. 513; Miller v. Truesdale, 56 Minn. 274, 57 N. W. 661; Barcus v. Prokup, 29 S. D. 40, 135 N. W. 756; Bergeron v. M. & St. L. R. Co., 37 S. D. 458, 159 N. W. 51; 22 R. C. L. 985, Sec. 214; 22 R. C. L. 1031; Haupt v. N. Y. C. & H. R. Co., 45 N. Y. Supp. 666; Louis v. N. Y. L. E. & W. R. Co., 5 N. Y. Supp. 313; Antonian v. Southern P. Co., 9 Cal. App. 718, 100 Pac. 877; Malott v. Hawkins, 159 Ind. 127, 63 N. E. 308; 6 A. L. R. 680.

SHERWOOD, P. J.  This action was brought to recover damages to an auto truck, which was practically destroyed by a collision with a Milwaukee passenger train, about three blocks north of the Milwaukee station in Sioux Falls, on May 28, 1920. The truck was crossing the main track at the Second street crossing when the accident occurred. The negligent acts alleged in the complaint are:

(a)   Failure to ring the bell or blow the whistle.

(b)   Running at a speed of 30 miles per hour contrary to

a city ordinance which limited trains within the city limits to a speed not exceeding 6 miles per hour.

(c)   Placing defendant's coal sheds and other building along the track, and cars on the switch tracks, in such a manner as to obstruct plaintiff's view and hearing of the approaching train.

Defendant interposed a general denial and alleged that the injury caused to the truck was entirely on account of plaintiff's negligence. There was a verdict for plaintiff, and defendant appeals.

Defendant's main track and three switch tracks cross Second street between Main and Phillips avenues. The tracks where they cross this street run practically north and south. The street runs practically east and west. The switch track nearest the main line crosses 70 feet west of the main track. The next crosses 50 feet farther west, and the other crosses Second street between that and Main avenue

The undisputed evidence on the part of plaintiff shows the following structures and physical conditions in that locality at the time of the accident.: Shortly after the switch track nearest the main line crosses Second street, it begins bending to the east; when it reaches a point 90 feet north of the north line of Second street, there is a red weigh house built on the west side of this track. The southeast corner of this weigh house is 23½ feet west of the west rail of the main track. The size of the weigh house is not given.

Twenty-five feet north of this corner of the weigh house and still on the west side of the switch track was a coal shed running parallel with the switch track and 98 feet long; 159 feet north of the point where the north line of Second street crosses the main track of defendant's railroad, there is what is called a derail, and the switch track and main track run parallel to each other; the switch track running still parallel to the main line extends for quite a distance beyond the coal shed.

On the day in question, there were four cars on this switch track just beyond the derail. The first was an automobile car, about 15 feet high and the south end of which was practically opposite the north end of the coal shed. Immediately beyond this car were two gondolas and then a refrigerator car. Beyond there and between them and the main track was a small tree

which was fully leaved out at the time the accident occurred. There is much other testimony relating to the location of cars, obstructions to view and hearing, etc., which in our view are not necessary to be considered in deciding this case.

The accident occurred shortly after 12 o'clock, noon, on a bright, clear  day, at a point where Second street crosses defendant's main line.  This street, at the time, was dry and level, but somewhat rough.

V. D. Crittenden, a truck driver of 5 years' experience, was driving plaintiff's truck; he was familiar with this crossing; had driven back and forth across it often during the last few years. He knew there were two or three trains due on this road about noon, but did not know the exact time they were due.  He was driving a Nash truck, weighing 5,600 pounds, carrying a load of a little over two tons.  This truck was 22 feet long from the spring at the front end of the truck to the tail light.  It was 13 feet, 4 inches from hub to hub.  The wheels were 34 inches in diameter and it was 6 feet 4 inches from the spring on the front end of the car to the back of the seat on which Crittenden was sitting and the doors of the cab were off.

On the day in question, Crittenden came north on Main avenue; turning east on Second street and proceeding east across the three switch tracks at a speed of 6 to 8 miles per hour, driving the car in intermediate gear.  He was looking and listening for trains from the time he turned on to Second street, but could not tell whether or not the cut-out of his car was open.  The brakes on his car were in good condition, and he could have stopped the car any time within a distance of 2 to 4 feet.  When he reached a point about 8 feet west of the west rail of the defendant's main track, he testifies he looked north and had a clear and unobstructed view up the main track for a distance of 189 to 190 feet, or about 30 feet beyond the derail.  From that point on to the main track, his view up the track for at least 189 feet appears to be entirely unobstructed.  He was then traveling and continued to travel east toward the main track on intermediate and at the same rate of speed.  He says he saw no train when he looked north at the point 8 feet west of the track; that he did not look north again until the front wheels of his car were on the west rail of defendant's track.  Then he heard the

warning whistle of the train and looked north and saw the
train coming toward him at a speed of about 30 miles per hour
and about 90 feet away.

When he first saw the train, the engine was just about op-
posite the red weight house and by a subsequent measurement he
found this weigh house was 90 feet north of where he crossed on
Second street. Immediately on seeing the train he stepped on the
gas and tried to beat the train across the track; but, before he
could get across, the engine pilot struck his car just in front
of the hind wheel, threw it about 15 or 20 feet and against an
8-inch telephone pole with such force as to break the pole twice
in two. From the time he saw the train coming until his car
was struck by it, his foot was on the gas giving the truck all
the speed possible to get it across the track ahead of the train.
The collision practically wrecked the truck, scattered the con-
tents, turned the truck completely around and left it on its
side facing the main track, about 15 or 20 feet to east of the
track.

Crittenden was out of the truck before the train stopped, and
he testifies it did not stop until the last car was about 350 feet
beyond Second street.

This, however, is disputed by defendant. Plaintiff's evidence
tends to show that the whistle was not sounded nor the bell
rung until the train was within about 90 feet of the Second
street crossing. This is also disputed by defendant's evidence.

[1] There is no doubt that defendant was negligent in
running its trains within the city limits at a rate of speed much
in excess of that limited by the city ordinance and that it was
competent for plaintiff to introduce the city ordinance as a part
of the proof of such negligence. This court said in Whaley v.
Vidal, 27 S. D. 633, 132 N. W. 242:

"It is further contended by the appellants that the court
erred in admitting in evidence the city ordinance of the city of
Flandreau as it appears in the book of ordinances of said city,
limiting the speed of trains passing through the city. This con-
tention is clearly untenable."

"The ordinance, introduced in evidence, * * * limits
the running of a train ?* ?* ?* at a speed exceeding 6 miles
an hour. The evidence, therefore, was clearly sufficient to war-

rant the jury in finding that the defendant was guilty of negligence * * * in running its train through the city of Flandreau at a speed in excess of 6 miles an hour."

The verdict against the defendant in this case also establishes the fact that it was negligent in not ringing the bell and blowing the whistle until within about 90 feet of the Second street crossing.

Notwithstanding defendant's proven negligence it still strenuously contends that if it had not been for the contributory negligence of the plaintiff, no accident would have happened; that the contributory negligence of plaintiff was the proximate cause of the injury to his property, and further contends that the facts and circumstances proven by the evidence on behalf of plaintiff establish negligence in law on his part and therefore he cannot recover.

From the testimony of V. D. Crittenden, we quote:

"Q. Just where were you when you last looked up the track? A. About 8 feet from the track, I should judge.

"Q. And you looked up the track then? A. Yes. * * *

"Q. So you could see 189 or 190 feet up the track; that was when you were 8 feet away? A. Yes, sir

"Q. You could see that all the way up the track clearly? A. Yes, sir.

"Q. Then you proceeded on until your wheels were on the west rail? A. Yes, sir.

"Q. And then you looked again to the north? A. When they whistled.

"Q. And at that time the train was 90 feet away? A. Yes, sir.

"Q. Before you looked again you were looking straight ahead in the meantime? A. Not all the time.

"Q. Which way were you looking? A. I looked down the track also.

"Q. Will you tell how you arrived at your conclusion that it was going 30 miles an hour if it was going straight toward you and only traveled 90 feet before it hit you? A. Because I was going 6 miles an hour and the train was coming 30 miles and struck me 15 feet.

"Q. 15 feet from what point? A. From where I was until it struck me."

"At the time I was hit, the gas was wide open. I started to step on her as quick as I saw the train and tried to beat it across the track."

"And all this time I could have stopped the car in from 2 to 4 feet by putting on the brakes."

[2] In determining this case there are three or perhaps four rules of law to be considered. First:

"Where the evidence is such that different minds may reasonably draw different conclusions as to contributory negligence, the question is for the jury. But where the court can say from the evidence that ordinarily intelligent, reasonable, and fairminded men would not and ought not to believe that plaintiff was acting as an ordinarly prudent person would have acted under the circumstances, the question of plaintiff's contributory negligence is for the court."

It is undisputed that plaintiff's driver was approaching a dangerous railroad crossing, driving a heavily loaded truck, on a street that was level and dry, but somewhat rough, at a time when he knew two or three trains were about due to pass over this crossing. Under these circumstances he did not stop his truck, slacken his speed, or even look up the track after he was within 8 feet of the west rail of the main line until the front wheels of his car were on the west rail. He did not look north then, until he heard the warning whistle of the train blow, and the train was then only 90 feet away. We think all ordinarily intelligent, reasonable, and fairminded men would not, and ought not to consider this as acting as an ordinarly prudent man ought to act under such circumstances. But the driver testifies he did look north when his car was 8 feet west of the west rail and saw no train.

It appears from all plaintiff's evidence that the train was traveling 30 miles per hour or 44 feet per second and plaintiff's driver was traveling 6 to 8 miles per hour or 8.8 feet per second if 6 miles per hour, and 10.12 feet per second if 8 miles per hour. In the second or less it took him to reach the track after he looked north 189 feet, the train had traveled 44 feet. It was then 90 feet from where he was struck. It must therefore have been 134 feet north of Second street when Crittenden looked north. It was therefore in his plain line of vision when

he looked north the last time and only 134 feet north of Second street.

It follows that he either did not look when he says he looked or he saw the train because it was where he must have seen it. If he saw the train coming when he was 8 feet away and tried to cross in front of it, he was negligent. If he did not look when he should have looked and might have seen it if he had looked, and thus drove upon the crossing, he was equally negli-- gent, and in either event he cannot recover.

[3]  It is well established that it is the duty of an auto- mobile driver approaching railroad tracks to look and listen where looking and listening will be effective, and that his failure to do so is contributory negligence as a matter of law. N. Y. C & H. Ry. v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; N. P. Ry. v. Tripp, 220 Fed. 286; Braumer v. Pa. Ry., 179 Fed. 577; C. M. & St. P. v. Bennett, 181 Fed. 799; Young v. Southern Pacific (Cal.) 190 Pac. 36; Benedict v. Hines (Wash.) 188 Pac. 512.

In Sherlock v. Minneapolis & St. P. & S. S. M. Ry Co., 24 N. D. 40, 138 N. W. 979, it is said:

"Where the exercise of the ordinary precautions of looking and listening and making an intelligent use of one's faculties to inform himself as to the approach of a train are neglected, and when the exercise of such precautions would have avoided the accident, negligence is conclusively established."

In West v. N. P. Ry. Co., 13 N. D. 221, 100 N. W. 254, it is said that, "if the failure to give a signal from the train was negligence on the part of the defendant, the negligence of the deceased contributed to the accdent, and the case, therefore, comes under the rule that, where an injury is due to the negligence of both parties, no recovery can be had."

In Westerkamp v. C. B. & Q. Ry., 41 Colo. 290, 92 Pac. 689, the court says:

"Where the physical situation renders the right of a matter clearly beyond all reasonable controversy, there is no conflict to be solved by a jury, because no just verdict can be rendered con- trary to all reasonable probabilities. In such circumstances, the testimony of a witness to that which is physically impossible must be rejected, and a court will treat as unsaid by a witness that

which, in the very nature of things, could not be as said. A trial court should not submit to a jury the determination of a fact about which, from all the testimony there can be no dispute." Anderson v. Dickenson, 187 Iowa, 572, 174 N. W. 402; Olds v Hines, 95 Or. 580, 188 Pac. 716; Artz v. Ry. Co., 34 Iowa, 153; Ry. Co. v. Elliott, 28 Ohio St. 340; Young v. C., R. I. & P. R. Co., 57 Kan. 144, 45 Pac. 583; Anderson v. Great Northern R. Co., 147 Minn. 118, 179 N. W. 687; Stafford v. Chippewa Valley Electric, 110 Wis. 331, 85 N. W. 1036; Powers v. Iowa Central (Iowa) 136 N. W. 1049; Cathart v. O. W. R. & Nav. Co., 86 Or. 250, 168 Pac. 308.

That it is the duty of the court to disregard testimony of a witness which is impossible, or so unreasonable as to challenge the credulity of the court, is announced in Pollock v. M. & St. L. Ry. Co., 45 S. D. 210, 186 N. W. 832.

[4] The plaintiff's driver was guilty of contributory negligence as a matter of law, and the court should have granted defendant's motion for a directed verdict.

. The judgment and order appealed from are reversed

Note.—Reported in 199 N. W. 782. See, Headnote (1), American Key-Numbered Digest, Railroads, Key-No. 347(10), 33 Cyc. 1084; (2) Negligence, Key-No. 136(9), 29 Cyc. 631; (3) Railroads, Key-No. 327(8), 33 Cyc. 1003; (4) Railroads, Key-No. 333 (1), 33 Cyc. 1117.

On care required of driver of automobile at railroad crossing, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924, and 46 L. R. A. (N. S.) 702.