FARMERS HOME MUTUAL INSURANCE COMPANY Appellant, v. GUSTAFSON AND LARSON COMPANY, Respondents

(42 N. W.2d 605)

(File No. 9101. Opinion filed May 8, 1950)

Rehearing denied June 8, 1950

**Austin & Lovre, Alan L. Austin, Irving A. Hinderaker,** Watertown, for Appellant.

**Boyce, Warren, Murphy & McDowell,** Sioux Falls, for Respondent.

SICKEL, J.   The Farmers Home Mutual Insurance Company, plaintiff, issued its fire insurance policy insuring a store building and contents belonging to K. E. Balgeman and located in the City of Clark.   During the term of the policy Balgeman entered into a contract with Gustafson and Larson Company, defendant, to make certain additions and alternations in the building, including the installation of a chill room.   This chill room was being insulated with cork in the form of slabs three feet high, one foot wide and two inches thick, set on edge one upon another.   Before being placed in position the cork slabs were dipped in a pan of asphalt kept hot by a two-burner kerosene stove.   The asphalt in the pan ignited from the flames of the stove thereby causing the fire which damaged the store and contents in the amount of $2,175.76.   Plaintiff paid the loss to Balgeman and then brought this action against defendant under its right of subrogation, contending that the loss was caused by the negligence of the defendant and its employees.   At the trial verdict for defendant was directed by the court, and plaintiff appealed.

■ The question here presented is whether the circuit court should have submitted the case to the jury. "* * * 'Negligence' * * * import[s] a want of such attention to the nature or probable consequences of the act or omission which a prudent man ordinarily bestows in acting in his own concerns; * * *". SDC 13.0102(d). It is the inadvertent failure to perform a noncontractual duty, to the logical consequent damage of another person. The duty is to use due care under the circumstances. Crabtree v. Ondell, 58 S.D. 95, 235 N.W. 109.

Inside the chill room where the work was going on the men had constructed a scaffold consisting of two saw-horses with planks laid on top. The platform was high enough so that the workmen standing upon it could reach the ceiling. On the platform stood a table, and on the table was a stove. Over the stove was the pan supported at the ends by bricks piled on the table. The pan was directly over the stove. The stove was eight inches high, twelve or thirteen inches wide and twenty-four inches long. The pan was four of five inches deep, twenty inches wide and forty inches long. The asphalt was first heated outside at the rear of the store building and was brought into the chill room in pails, handed to one of the two men on the platform and then poured into the pan. There it was kept hot by the stove. The burners of the stove consisted of a kind of protecting jacket outside and a circular asbestos wick. The fuel supply was contained in an inverted glass jar, piped to the burners to which the fuel was fed by gravity. The flow of fuel to the burners was regulated by a needle valve operated by hand and the flow of fuel was decreased or increased "by screwing the needle in and out". Irvin Glade, employee of defendant and superintendent of the Balgeman job, testified that he was on the platform working at the time the fire occurred; that as a rule he attended to the regulation of the stove; that this was a part of his work; that about the time of the fire the flames of the stove got up a little too high and he noticed the flames coming around the edge of the pan; that they were coming up over the sides of the pan; that the flame was starting to come around; that when he noticed the blaze coming up he turned the burners off,

but that shutting off the oil did not stop the blaze from coming up; that it continued to climb and it was not long until the blaze was in the pan. It was the ignition of the asphalt in the pan that caused the damage.

"The law exacts of one who puts a force in motion that he shall control it with a skill and care proportioned to the danger created * * *." 28 Am.Jur., Negligence, § 85. In this case the force put in motion by defendant was the open flame oil burning stove under an open vat containing inflammable substance. The danger was that the flame might rise high enough to ignite the asphalt and start a conflagration, thereby doing injury to persons or property. The skill and care required of defendant and its employees was that which would be commensurate with the danger involved under the circumstances. Grandflaten v. Rohde, 66 S.D. 335, 283 N.W. 153; 45 C.J., Negligence, § 274. It was the duty of Glade, defendant's employee, to regulate the stove. Reasonable men might draw the conclusion from the evidence that Glade failed to use due care in the performance of his duty to so regulate the stove as to prevent the flames from rising dangerously high. The evidence therefore presents an issue of fact for the jury. Buboltz v. Chicago, M. & St. P. Ry. Co., 47 S.D. 512, 199 N.W. 782; Jensen v. Juul, 66 S.D. 1, 278 N.W. 6, 115 A.L.R. 1280.

What we have said distinguishes this case from those previously decided by this court in which the doctrine of res ipsa loquitur was applied. Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521.

Judgment reversed.