[Civ. No. 6276.  First Appellate District, Division One.—March 14, 1928.]

SAM R. BAGWILL, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

CONSOLIDATED LUMBER CO. (a Corporation), Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

William Kehoe and Andreani & Haines for Appellants.

Frank Karr, E. E. Morris and C. W. Cornell for Respondent.

PARKER, J., *pro tem.*—These actions arose out of the same state of facts as will hereinafter appear. By order of court and stipulation of counsel the actions were consolidated for trial.

The plaintiff Bagwill in the first action was the employee of Consolidated Lumber Company, plaintiff in the second action. While employed as a truck driver and while operating the truck of the Consolidated Lumber Company the plaintiff Bagwill collided with a train of cars owned and operated by defendant Pacific Electric Railway Company, and out of this collision the two actions arose. Bagwill

sued for damages resulting to himself, and the lumber company brought the action for damage to the truck.

Upon the conclusion of the testimony offered on behalf of both plaintiffs the court below granted defendant's motion for a nonsuit in both cases. Hence the appeals, which present the question of the sufficiency of the evidence to justify a submission of the case to the jury.

In considering the court's ruling on the motion for nonsuit the established facts must be viewed in the light most favorable to plaintiff (*Young* v. *Southern Pac. Co.*, 189 Cal. 754 [210 Pac. 259]).

The accident occurred in the county of Los Angeles at a place between Los Angeles and Long Beach, and more particularly described as the point of intersection of American Avenue and Willow Street. Willow Street runs east and west and American Avenue at a right angle thereto. South of Willow Street American Avenue is divided by the private right of way of defendant railway company, upon which was operated the train in this case, one-half of the avenue lying east and the other half west of the right of way; whilst north of Willow Street the avenue lies wholly on the east side of such right of way. Two parallel railroad tracks run along the right of way, and a short distance from Willow Street there is a spur track starting from the westerly track of the two, which spur extends across and north of Willow Street, so that where Willow Street and the right of way intersect there are three parallel railroad tracks to be crossed in crossing American Avenue. The traffic regulations, supported by ordinance, require that all traffic going south on American Avenue turn to the right at Willow Street, cross the tracks and proceed southerly on that portion of American Avenue west of the right of way. As heretofore noted, American Avenue north of Willow Street is on the east side of the right of way. At Willow Street are traffic signs reading "Turn to right" and "South bound traffic must drive on right hand side of tracks." American Avenue is one of the principal thoroughfares running from Los Angeles to Long Beach, and this crossing at Willow Street is the scene of much traffic, though nothing appears in the present record indicating that at the time of the accident in question there was any traffic other than

the truck driven by plaintiff Bagwill. About 10:30 A. M. on May 14, 1923, the weather being clear, Bagwill drove the truck south on American Avenue to Willow Street, where he turned to the right to pass over the crossing, and while the rear wheels of the truck were on the easterly railroad track the train hit it.

There are three points discussed in the briefs, and within these three is embraced the entire case, first, the question of defendant's negligence; second, plaintiff's contributory negligence, if any; third, the doctrine of last clear chance.

For the purposes hereof at this stage we pass the question of defendant's negligence and consider the conduct of plaintiff.

Plaintiff Bagwill was a young man, aged 28 years, and, as far as the record discloses, in possession of all of the ordinary faculties. Up to the date of the accident he had been driving truck for Consolidated Lumber Company over a period of eight months. Before the accident he had gone over that crossing six or eight times a week during the time he was driving. His truck was a five-ton truck, 28 feet long and weighing in the neighborhood of eleven thousand pounds when empty, and it was empty at the time of the accident. On the morning in question, driving south on American Avenue, he was proceeding alongside of the railroad tracks. There was nothing to obstruct his view except that the record discloses that along the right of way telephone poles had been set and stood at a distance of approximately 100 feet apart. As he was driving south on American Avenue close to the tracks the course of the train would be north on the same avenue on a straight stretch; in other words, had he continued his course south the train and truck would have passed each other going in opposite directions. When he came to Willow Street he followed the usual traffic and turned to the right to make the crossing. The tracks were about 18 inches above the level of the road, and this difference was graded by an incline of about five feet. The rails of the tracks protruded about three or four inches above the surface. Considering the length and weight of the truck and the condition of the crossing and grade the highest speed at which the truck could be driven

empty over the crossing was not to exceed three to five miles an hour. The weather on that morning was dry and it had not been foggy. The plaintiff Bagwill does not recall what happened at the time of the collision, nor does he recall anything about approaching the crossing or going over the tracks or of being struck. The last thing he remembers of occurrences just before the accident was that some 20 minutes before reaching the crossing he stopped on the road and purchased a cigar. The speed usual for him in coming down American Avenue was 15 miles per hour. Further he testified that in his daily work he had to cross many tracks and rights of way, and that it was his habit in crossing to look and listen as he approached crossings. The tires on the front wheels of the truck were solid. In making this particular crossing it was necessary to approach the track square for the reason that if an oblique or cutting-in approach were attempted the wheels would skid and the truck go down the car track. The truck could be stopped in one second.

All of the foregoing statement is from the testimony of plaintiff Bagwill.

The train in question was traveling north on the extreme easterly rails, being the rails first encountered in crossing. It was a four-car train, and prior to the happenings here discussed was traveling at a speed of from 40 to 45 miles per hour. Nothing in the record indicates that the speed was unusual at the time and place. No claim of violation of any law or ordinance is pleaded or urged here. A passenger on the train, one named Frank West, gave testimony as follows: "When the car was within 300 feet of the crossing I saw the truck nearing the incline to go across the track. He had not gotten on the track at all. He proceeded on the track when we were about 150 feet from the crossing. The motorman was sounding his bell. The condition of the weather was clear; there was no fog and it had not been raining. I had no trouble seeing the truck as I was seated in the front seat of the front car in the rear of the motorman's cab. I saw the truck before he made the turn. He made a big wide swing to get around there with the big truck like that, 28 feet long."

The remainder of the testimony differs little from that already outlined. This is particularly true with reference to the conduct of plaintiff Bagwill.

We think this shows sufficiently that the negligence of plaintiff proximately contributed to the accident. In fact, we could go further and conclude that it did more than that. There is no doubt but that plaintiff was guilty of contributory negligence. There is no escape from the conclusion from the uncontradicted evidence that the driver of the truck closed his eyes to the danger necessarily involved in an attempt to cross the track and blindly drove his truck into the path of the oncoming car (*Martz* v. *Pacific Electric Ry. Co.*, 31 Cal. App. 592 [161 Pac. 16]).

The appellants herein lay much stress on the claim that it must be presumed that the driver looked and saw the train coming, this presumption arising from the driver's statement that it was his custom to stop and look at all crossings though he had no memory as to his conduct at the time in question. Under the facts here little aid can be derived from this presumption. The driver did not get on the track until the train was within 150 feet of him; and as the witness West could easily see the truck when 300 feet away it is an inevitable inference that the driver if he looked must have seen the approaching train. The case seems so plain that it is unnecessary to digest the authorities on the subject.

The case of *New York Oil Co.* v. *United Railroads*, 191 Cal. 96 [215 Pac. 72], is particularly in point. By merely changing the names of the parties the cited case would suffice as an opinion here as to the facts. This case reviews the authorities and announces the law which sustains the action of the lower court in the instant case.

Lastly, appellants urge that the trial court should have resorted to and applied the doctrine of the last clear chance.

This doctrine presupposes that the plaintiff has been negligent; that as a result thereof he is in a situation of danger from which he cannot escape by the exercise of ordinary care; that the defendant is aware of plaintiff's dangerous situation under such circumstances that he realizes or ought to realize his inability to escape therefrom; that the

defendant then has a clear chance to avoid injuring the plaintiff by the exercise of ordinary care and fails to avail himself of the opportunity so presented. If all of these elements are present the rule applies and enables the plaintiff to recover notwithstanding his own negligence; but if any of them be absent the rule does not apply, and the case is governed by the ordinary rules of negligence and contributory negligence (*Palmer* v. *Tschudy,* 191 Cal. 696, 700 [218 Pac. 36] ; *Chappell* v. *San Diego & Arizona R. R. Co.,* 201 Cal. 560 [258 Pac. 73]). The doctrine is applicable when the defendant actually perceives the perilous position of plaintiff in time to avoid the accident by the exercise of ordinary care (*Chappell* v. *San Diego & Arizona R. R., supra; New York Oil Co.* v. *United Railroads, supra*). In the last-mentioned case we find this apt language: "Conceding that the motorman while he was as yet some distance from the point of collision, was aware of the approach of the truck, nevertheless the driver of the truck was aware of the approach of the train and could have brought his truck to a standstill within a distance of three feet. There was a concurrent duty, as a matter of law, upon the part of the driver of the truck to stop, if possible, before the collision actually occurred. Obviously the truck, proceeding at the slow rate of speed mentioned and with the ability to stop· within the short distance of three feet, had the greater opportunity to avoid the collision. And so long as the negligence of the driver of the truck in continuing on in his course to the point of crossing the tracks of defendant was contemporaneous and concurrent with that of the defendants' motorman, plaintiff cannot rightfully rest his case upon the doctrine of a last clear chance."

In the instant case the witness West, a passenger upon the train, testifies that he saw plaintiff going on to the track at a point 150 feet distant from the point of collision, and that the brakes took hold about 75 feet from said point of contact, and that the train slowed down and started to slide up to the collision. It would be and is a matter of common knowledge that even if we assume that thought and action were simultaneous on the part of the motorman, it would take a little time for the brakes to told hold after the motorman had operated whatever mechanical devices were

employed to effectuate the braking. The truck was at no time stalled on the track, but was moving all of the time and was unloaded; and it is a fair inference that with knowledge of the train's approach, if the driver attempted the crossing, as he did, he would be able to negotiate the passage in safety. It was probable that even then he could have accelerated his pace and gotten safely over (*Young* v. *Southern Pacific,* 182 Cal. 380 [190 Pac. 36].)

We have a four-car train moving 45 miles per hour on its own right of way. The motorman is confronted with a situation which requires his action to avoid striking an object within 150 feet. The situation calling for immediate action is brought about through no fault of the motorman. Within 75 feet he has applied all of his brakes sufficient to cause the train to slide. This means that he has brought about the brake application within practically one second of time. Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. There seems still to be some misconception of this doctrine of last clear chance. It was not devised as a last resort to fasten liability on defendants. Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. The law in many of its workings indicates great charity and solicitude for individual rights. It says to a negligent plaintiff that in spite of his lack of caution he will be protected against wanton, wilful or avaidable harm. But, on the other hand, it penalizes no innocent person. We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely, last *clear* chance, not possible chance. The supreme court has not left us to speculate on the application of the doctrine. (*Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36]; *Young* v. *Southern Pacific Co.,* 182 Cal. 369 [190 Pac. 36]; *Wallis* v. *Southern Pacific Co.,* 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408]; *Gainer* v. *United Railroads,* 58 Cal. App. 459 [208 Pac. 1013].)

The judgments are affirmed.

Tyler, P. J., and Knight, J., concurred.