270 P.2d 1071

**TRAUSCHT v. LAMB et ux.**

No. 5736.

Supreme Court of Arizona.

May 26, 1954.

Rehearing Denied June 29, 1954.

Laney & Laney, Phoenix, for appellant.

Moore & Romley, Anthony T. Deddens, Phoenix, for appellees.

JESSE A. UDALL, Superior Court Judge.

The sole question presented by this appeal is whether the trial court erred in refusing to instruct the jury as to the doctrine of the last clear chance.

The parties appear here in the same order as they were in the lower court, hence we shall refer to appellant as plaintiff and the appellees as defendants. Plaintiff Arthur Trauscht brought suit against defendants Joe Lamb and Prescilla Lamb, his wife, to recover damages for personal injuries sustained by him as a result of a collision that occurred on Baseline Road south of Phoenix, in Maricopa County, at a point about 300 feet east of the intersection of Baseline Road and Fourteenth Street, about the hour of 2:00 o'clock p. m. on December 22, 1950.

The facts connected with this incident must be taken in a light most favorable to plaintiff, for as we stated in the recent case of Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240, 242, the rule is:

"* * * We must assume that the jury might have believed the evidence upon which an instruction in favor of the losing party was predicated, and that if the correct instruction had been given 'the jury might have rendered a verdict in favor of the losing party.' O'Meara v. Swortfiguer, 191 Cal. 12, 214 P. 975, 976. The truth of the evidence or allegations tending to warrant the instruction offered will be assumed by the court on appeal. (Citing cases.)"

* * * * * *

"In weighing the sufficiency of the evidence in this case to justify the giving of the requested instruction, the inferences which reasonably and logically flow from the evidence are to be considered. Such inferences are a part of the evidence. Atchison, Topeka & Santa Fe R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167."

Taking the facts in this light, they appear to be substantially as follows:

Shortly before the accident occurred, the plaintiff drove out of his citrus grove onto Baseline Road in a Ford pick-up truck at a point about 500 feet east of the spot where the collision took place, and proceeded west on the north side of said road at a speed of about 10 to 20 miles per hour. Baseline Road in this area has a width equivalent to the ordinary three-lane highway. At a point approximately 300 feet east of Fourteenth Street plaintiff, after giving a proper signal, made a left-hand turn across the highway to the south for the purpose of entering a private driveway leading south from Baseline Road. Defendants were then driving eastward on the south side of Baseline Road in a Chevrolet sedan at a speed somewhere between 40 and 65 miles per hour. The husband, Joe Lamb, was driving, and his wife Prescilla and their three small children were in the car with him. As plaintiff turned south across the road in front of the on-coming car of defendants he was

going at a speed of approximately 5 miles per hour, and as his pick-up truck neared the south line of the paved road defendants' Chevrolet sedan struck the pick-up truck at a point slightly to the rear of the center of said truck and on the right side thereof, and as a result of the collision the plaintiff received serious bodily. injuries. He was unconscious for a period of six weeks, and up to the date of the trial he still was not sufficiently recovered to be able to testify as a witness in the case.

Defendant Joe Lamb testified that he saw plaintiff's truck almost one-fourth of a mile east of the point of collision but that he did not see the plaintiff turning south in front of him until he was within 50 to 100 feet of the point of collision; that as soon as possible after seeing that plaintiff was making a left turn he applied his brakes and skidded his wheels before colliding with the truck. A skid mark was shown by the photographs admitted in evidence. The paved portion of the road at that point was 33 to 36 feet in width. At a point some 300 to 600 feet west of where the collision took place defendants met another car going west; after passing said car there was no other motor vehicle on the highway between defendants and plaintiff as they approached each other that interfered with their view nor was there oncoming westbound traffic to interfere with defendants' freedom of movement on the highway. Both parties could see or with reasonable care should have been able to see each other for a space of 300 feet or more before they collided. Another important fact that was testified to by two witnesses was that plaintiff held out his left hand, signalling his intention to turn south, for a distance of approximately 150. feet before he made the turn in front of defendants' car.

The plaintiff in his complaint alleged negligence on the part of the driver of defendants' car. The defendants set up the defense of contributory negligence on the part of the plaintiff. The case was tried to a jury and a verdict was returned in favor of defendants and against plaintiff. Thereafter judgment was entered, motion for new trial was denied, and this appeal followed.

The sole assignment of error made by plaintiff is to the refusal of the trial court to instruct the jury on the last clear chance doctrine. It was the contention of plaintiff that under the facts established by the evidence the doctrine applied, and that this issue should have been submitted to the jury for their consideration. However, the trial court accepted defendants' contention that under the evidence adduced it would be improper to give such an instruction, and the defendants cannot now urge that the two instructions submitted by plaintiff were technically incorrect, as no such objection was made in the lower. court. Thus, the real question presented by this appeal is whether the doctrine of

the last clear chance applies to the facts herein.

Defendants' position is set forth in seven propositions of law, and assuming that these propositions are correct in principle, a close analysis of them, taking the evidence as we must in the strongest possible manner in support of the theory of plaintiff, shows that all of said propositions are inapplicable to the facts in this case, with the exception that proposition number six presents a question that deserves consideration. It reads:

"The last clear chance doctrine does not apply where the negligence of the plaintiff or the negligence of both the plaintiff and the defendant continues down to the moment of the accident, in other words, where the negligence of the plaintiff is a concurring or continuing force contributing proximately to the injuries of the plaintiff."

▆▆▆ Plaintiff urges that if the last clear chance doctrine does not apply where the negligence of the plaintiff, or the negligence of both the plaintiff and defendant, continues down to the moment of the accident, then the doctrine as heretofore applied in the courts of this state will be abrogated. The case of Girdner v. Union Oil Co. of California, 216 Cal. 197, 13 P. 2d 915, 918, contains the following language which seems to be a complete answer to the legal proposition, supra, relied upon by defendants:

"The element of continual negligence is present in all last-chance cases. If defendant is not able to avoid injuring plaintiff in the exercise of ordinary care, the plaintiff's original negligence continues to be the proximate cause of his own injury, which bars recovery. If, on the other hand, defendant is able to avoid injuring the negligent plaintiff, and negligently fails to do so, plaintiff's original though continuing negligence only remotely contributes to the injury and is not the proximate cause thereof, and hence the applied doctrine, by its own principles, establishes the right of plaintiff to recover notwithstanding the fact that his original negligence would, by its continuing nature, bar a recovery if the doctrine were not applicable. To hold otherwise would be to dispute its existence."

And in Center v. Yellow Cab Co. of Los Angeles, 216 Cal. 205, 13 P.2d 918, 920, we find the following exposition of the rule:

"* * * The real issue in cases of this character is not whose negligence came first or last, but rather whose negligence, however it came, was the proximate cause of the injury. Whether or not, therefore, negligence is the proximate or remote cause, depends upon the facts of the particular case. The doctrine of continuing negligence has no application

unless the negligence is the proximate cause of the injury. If all the elements of the doctrine of the last clear chance are present and plaintiff's negligence becomes remote in causation, then the doctrine applies. If, on the other hand, any of the elements of the doctrine are lacking, courts have declared, and rightfully so, that plaintiff's negligence being continuous and contributory with that of defendant bars a recovery. But a defendant is never relieved of liability if he has it in his power to prevent injuring another, and this is so whether one is unaware of his peril by reason of his negligence or not."

Taking the evidence in its strongest light in favor of the plaintiff the jury might have believed the negligent act of defendant Joe Lamb was the proximate cause of the injury. In view of the soundness of the above holding and its reasonable application to the doctrine of the last clear chance this court will follow the law laid down by the Supreme Court of California on this important principle.

Plaintiff's proposition of law number 1 reads:

"If a plaintiff in turning to his left across a highway has negligently placed his motor vehicle in a position of danger of being struck by a defendant's automobile approaching from plaintiff's right, and is either oblivious to his danger or else unable to extricate himself from it by the exercise of reasonable care, then if the defendant either realized or by the exercise of reasonable care on his part should have realized the plaintiff's peril in time to avoid colliding with him, but negligently failed to use the means at hand to avoid such collision, the defendant is liable under the last clear chance doctrine."

Does the record in this case present facts which, if believed by the jury, would make effective the operation of the doctrine of the last clear chance? In a similar case the Colorado Supreme Court said:

" * * * The plaintiff's peril came into existence at the moment his car passed a point beyond which he was unable to change his course or speed to prevent a collision. When plaintiff passed that point he had taken the right of way; he had created a dangerous situation from which he could not extricate himself; and he had to remain in danger until his car covered the space within which he could not change his course or speed to avoid the collision * * *. During the time he was traveling such distance nothing plaintiff could do, whether conscious or unconscious of his situation, would prevent a collision. During such time his safety depended solely upon the action of the driver of defendant's truck. * * *" In-

dependent Lumber Co. v. Leatherwood, 102 Colo. 460, 79 P.2d 1052, 1054.

In the case at bar it might be found that plaintiff negligently placed his motor vehicle in a position of danger, and that he reached a point as he turned slowly south across the road, where he no longer was able to change his course or speed to prevent a collision. In view of the tenacious human desire to avoid injury and death, could it not have been concluded by the jury, if properly instructed on this doctrine, that the plaintiff was oblivious to his danger until he had reached the point beyond which he was unable to extricate himself? We believe the evidence on this point was sufficient to have warranted this inference.

The question then presents itself, Did the defendant Joe Lamb realize, or by the exercise of reasonable care on his part should he have realized, the plaintiff's peril in time to avoid colliding with him but negligently fail to use the means at hand to avoid such collision? Again the answer would be in the affirmative if the jury elected to believe the evidence heretofore referred to in the statement of facts.

In the case of Casey v. Marshall, supra, 64 Ariz. 232, 168 P.2d 240, 244, we stated:

"While the driver of defendants' automobile stated that he did not see plaintiff's automobile until practically the instant of the collision, the jury had a right to infer, under the circumstances, that he should have seen the automobile. Presumably he was looking where he was driving. The street was well lighted. There were no obstructions. We believe the doctrine 'to look is to see' would have relevancy here. Barry v. Southern Pacific Co., 64 Ariz. 116, 166 P.2d 825, 829. In that case we said: ' * * * We believe that the so-called rule "to look is to see" is a necessary and salutary rule, but it can have no application in the instant case. If plaintiff had been upright and could have been seen clearly by the exercise of reasonable care, we think the rule would apply.' "

The Restatement of the Law, Torts, Section 479, reads as follows:

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

"(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

"(b) the defendant

"(i) knows of the plaintiff's situation and realizes the helpless peril involved therein; or

"(ii) knows of the plaintiff's situation and has reason to realize the peril involved therein, or

"(iii) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

Applying this law to the present fact situation, it would have been possible for a jury to find that plaintiff was negligent in that he subjected himself to an unreasonable risk of harm by making a left turn across the highway in front of defendants' car while plaintiff was traveling at a speed of about five miles per hour, but that he was in helpless peril in that he was oblivious to his danger or was unable to extricate himself therefrom by the exercise of reasonable care, and that the defendant Joe Lamb realized, or by the exercise of reasonable care on his part should have realized, that plaintiff was in helpless peril, and that defendant Joe Lamb did as a matter of fact have the last clear chance to avoid harming the plaintiff, and by the exercise of reasonable care in slowing or swerving his automobile could have avoided the collision.

After careful examination of the record in this case we feel that the evidence was sufficient to justify the giving of an instruction on the doctrine of the last clear chance. As was stated in the case of Casey v. Marshall, supra:

"* * * The rule has been established in this court that instructions which go to the gist of the action, and which are justified by the evidence, must be given. Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975; Webb v. Hardin [53 Ariz. 310, 89 P.2d 30], supra. See also Brown v. Yocum, 113 Cal. App. 621, 298 P. 845. Failure to do so constitutes reversible error."

The judgment of the trial court is reversed, and the cause remanded with directions to grant a new trial.

PHELPS, C. J., and STANFORD and UDALL, JJ., concurring.

NOTE: Justice DUDLEY W. WINDES disqualified, having been the trial judge, and the Honorable JESSE A. UDALL, Judge of the Superior Court of Graham County, was called to sit in his stead.

LA PRADE, Justice (dissenting).

I cannot agree with the disposition of this case by the majority decision for the reason that I cannot discover from the evidence any facts which would authorize the giving of an instruction on the doctrine of last clear chance. Such was the opinion of the learned trial judge who tried the case, and who heard and saw all the witnesses and had the feel of the case.

The claim of applicability of the doctrine of last clear chance to the facts was presented to him and thoroughly argued at the time the request for the instruction was made and refused. The matter was again presented, briefed, and thoroughly argued at the time the motion for a new trial was made and denied. I thoroughly agree with the opinion of the trial judge.

The facts in bold relief are that the plaintiff was driving west in the north half of the highway (33 to 36 ft. wide). The photographs disclose that the customary white line clearly indicated the center of the highway. Defendant was driving east on the same highway, being on the south half thereof. The accident occurred at 2 p. m. in broad daylight. There were no cars or other obstructions between the two cars as they approached each other. From plaintiff's actions it appears that he intended at some time to turn south into a private driveway leading into an orchard. The existence of this driveway was unknown to defendant, and there were no signs or other markings to indicate the existence of the private driveway. Prior to the point of collision plaintiff had indicated by his extended hand that he intended to turn south. His hand had been extended while he travelled approximately 150 ft. but without making a turn. When and where he intended to turn was known only to him. Plaintiff saw, or should have seen, the defendant as he approached. Defendant testified that he saw plaintiff at all times. Defendant was entitled to believe that plaintiff saw him and that plaintiff would not abruptly turn in front of him.

The giving of the hand signal cannot be interpreted to mean that the plaintiff was thereby giving notice of the fact that he was about to place himself in a position of peril. Defendant is not to be charged for a want of clairvoyance. Defendant's conduct is open to examination only *after* plaintiff came into a position of peril, discovered or discoverable, Casey v. Marshall, 64 Ariz. 232, 238, 168 P.2d 240; Cashell v. Southern Ry. Co., 152 Va. 335, 147 S.E. 209, 211; Rix v. Stone, 115 Conn. 658, 163 A. 258, 260; Lieberman v. McLaughlin, 233 Ky. 763, 26 S.W.2d 753, 756. The case of Johnson v. Sacramento Northern Ry., 54 Cal.App.2d 528, 129 P. 2d 503, 505, 506, recognizes the importance of the sequence of events which gives the party to be charged time for effective action to avoid the accident after the discovery of the injured party's peril. It is there said:

"The doctrine is most frequently applied in situations where a driver or pedestrian has placed himself, through his own negligence, in, or in very close proximity to, the path of an oncoming train or vehicle and is thereafter discovered in such position of danger by the operator of the oncoming train or vehicle in ample time for the latter to avoid the accident by

the exercise of ordinary care. In such cases there is a *distinct sequence of events* which gives the party sought to be charged time for effective action * * * to avoid the accident after the discovery of the injured party's peril.

\* \* \* \* \* \*

"It is also significant to note that the 'situation of danger' or 'position of danger,' referred to in the authorities dealing with the last clear chance doctrine, is reached only when a plaintiff, moving toward the path of an oncoming train or vehicle, *has reached a position* 'from which he cannot escape by the exercise of ordinary care.' In other words, it is not enough, under the last clear chance doctrine, that plaintiff is merely approaching a position of danger, *for until he has reached a position of danger*, he has the same opportunity to avoid the accident by the exercise of ordinary care, as has the defendant. In such cases the ordinary rules of negligence and contributory negligence apply, rather than the exceptional doctrine of last clear chance. It is only in cases in which, *after plaintiff reaches a position of danger*, defendant has a last clear chance to avoid the accident by the exercise of ordinary care, and plaintiff has no similar chance, that the doctrine is applicable." (Emphasis supplied.)

The south half of the highway was less than 18 ft. wide. The photographs show a very distinct skid mark made by the right rear wheel of defendant's car. From appearances this skid mark appears to be approximately 40 ft. in length and is in the middle of the south half of the highway. Defendant's Chevrolet is approximately 5 ft. wide over all. This indicates that the left side of this car was approximately 4 ft. from the middle of the highway. The photographs show that the Ford pick-up was hit right under the door handle, and for all intents and purposes in the middle of the car. From the photographs it also appears that defendant's Chevrolet struck the Ford head-on. From all the evidence and circumstances I would say that the Ford truck had proceeded far enough into the south half of the highway so that its rear end had passed over the middle of the highway at the time of impact.

The doctrine of last clear chance can only be relied upon when a plaintiff has negligently subjected himself to a risk of harm from a defendant's *subsequent* negligence, and may recover for harm caused thereby, if, immediately preceding the harm,

"(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

"(b) the defendant

"(i) knows of the plaintiff's situation and realizes the helpless peril involved therein; or

"(ii) knows of the plaintiff's situation and has reason to realize the peril involved therein; or

"(iii) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff." Sec. 479, Restatement of the Law of Torts.

Plaintiff, up to the point of crossing the middle line, was merely approaching a position of danger, and defendant need not assume in advance that plaintiff would pass from a position of safety without taking proper precautions.

"In other words, it is not enough, under the last clear chance doctrine, that plaintiff is merely approaching a position of danger, for until he has reached a position of danger, he has the same opportunity to avoid the accident by the exercise of ordinary care, as has the defendant." Johnson v. Sacramento Northern Ry., supra.

Plaintiff passed from a position of safety and into a position of danger in a fraction of a second. The last clear chance cannot come into operation until after the vehicle has reached such a position of danger and ordinarily, in the case of rapidly moving vehicles, the remaining time is too short to afford a last clear chance to avoid the accident. The question is: Where was defendant when plaintiff turned across the highway? The evidence is that he was 50 to 100 ft. away, travelling at a speed variously estimated at 40 to 65 miles per hour.

It is a well-established fact that there is a "reaction time", or the time in which an automobile driver can act when danger is presented, depending upon the individual. In some young and especially alert individuals the reaction time may be as little as one-half a second, but the *average* reaction time is three-fourths of a second. Accident Facts, publication of National Safety Council, Chicago; Deft Driving (1952) by Milton D. Kramer, published by Ford Motor Co., Dearborn, Mich.; Arizona Traffic Accidents, May 1954.

"Reaction distance" is the distance an automobile will travel before the driver does anything in the face of some distress signal or danger situation.

The average "stopping distance" on cars having brakes in first-class condition on any level concrete surfaces depends upon the speed of the automobile at the time the brakes are applied. A car driven at 50 miles per hour will travel 55 ft. during the reaction time ($\frac{3}{4}$ second), and an additional 138 ft. after the brakes are applied

before it can be safely brought to a stop. The stopping distance for a car being driven at 60 miles per hour is 264 ft., in which the reaction distance is 66 ft. and the braking distance is 198 ft. (See publications, supra.)

Plaintiff's witness *estimated* that defendant was driving at a speed somewhere between 40 and 65 miles per hour. Assuming defendant was driving 60 miles per hour his car travelled 66 ft. (reaction distance) before he applied his brakes. Further assuming that defendant was 100 ft. away (maximum estimate) from plaintiff's car when he first saw plaintiff's car in a position of distress, means that defendant only had to travel 36 ft. before colliding with the plaintiff's car. As stated above the skid marks indicate that he travelled approximately 40 ft. after brakes were applied and before contact was made. Under the assumption made defendant was still travelling at the rate of 60 miles per hour when he first applied his brakes. At this moment he was 36 to 40 ft. from plaintiff's car sitting crosswise in the south half of the highway. In view of this situation it does not appear to me that any jury would have been authorized to find the defendant was negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff. As I view the evidence it patently discloses that the defendant had no existing ability to avoid harming the plaintiff. And as was said in Bagwill v. Pacific Electric Ry. Co., 90 Cal.App. 114, at page 121, 265 P. 517, at page 519:

" * * * Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. * * * We are not to tear down the facts of a case and rebuild the same so that, by a trimming-down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely, last *clear* chance, not possible chance." (Emphasis supplied.)

Practically all of the cases recognize that it takes an exceptional set of facts involving collisions between moving vehicles to authorize the giving of an instruction on the doctrine of last clear chance. I am of the opinion that the doctrine is wholly inapplicable and should not be applied to the ordinary case, in which the act creating the peril occurs practically simultaneously with the happening of the accident, and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences. To apply the doctrine to such cases would be equivalent to denying the existence of the general rule which makes contributory negligence a bar to recovery.

To have instructed the jury as requested would have conveyed the idea that there was *evidence* from which it could be inferred that defendant had an opportunity

to avoid harming the plaintiff. A verdict for plaintiff following such an instruction would have pinned on defendant the negligence that was the proximate cause of the accident and injury, in my mind a conclusion that could not have been sustained.

The judgment should be affirmed.