440 P.2d 54

**Dean ROWLEY and Christine Rowley, husband and wife, Appellants,**

**v.**

**Barbara ROWLEY, Individually and as Executrix of the Estate of Thomas O. Rowley, Deceased, Appellee.**

**No. 1 CA–CIV 495.**

Court of Appeals of Arizona.

April 22, 1968.

Rehearing Denied May 15, 1968.

Review Denied July 2, 1968.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank and Paul G. Ulrich, Phoenix, for appellants.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal from a jury verdict, judgment, and from the denial of a motion for new trial wherein the appellant was the defendant in a suit over the proceeds of a $100,000 life insurance policy. The sole question before this Court is whether the evidence was sufficient to sustain the giving of an instruction.

The facts necessary for a determination of this matter on appeal are as follows. Dr. Tom Rowley established his medical practice in Mesa, Arizona, in July of 1948. In the fall of 1954, Dr. Dean Rowley came to Mesa and discussed future employment with Tom Rowley. Although the names are similar the two doctors were not related, and we will refer to them hereafter in this opinion as Dr. Tom and Dr. Dean. In January of 1955, Dr. Dean was licensed to practice medicine and, in March of 1955, entered into an employment contract with Dr. Tom. The contract was to last for one year and under its terms Dr. Dean was to receive a set salary. Before the expiration of the contract for employment Dr. Tom went to his attorney, Harry J. Cavanagh, for the purpose of having the latter prepare a partnership agreement for the two doctors. Mr. Cavanagh prepared such a partnership agreement which was to have its inception as of 1 March 1956. Under the terms of the agreement the parties were to become equal partners after three years. Although the partnership agreement in evidence was signed only by Dr. Tom, Dr. Dean testified that the agreement was followed in every respect with only two minor variations.

In October 1956 the same attorney prepared a "Purchase-And-Sale Agreement" which is the subject of this litigation. The agreement provided:

"WHEREAS, the partners consider it to be to the mutual advantage of themselves and their respective estates to enter into an agreement whereby, upon the death of one of them and the survival of the other, the estate of the deceased partner will be obligated to sell and the surviving partner will be obligated to purchase the interest of the deceased partner in the partnership business at a price deemed by the partners to be just and fair to all concerned;

\* \* \* \* \* \*

"INSURANCE PROCEEDS EXCEED PURCHASE PRICE

9. In the event the said Life Insurance proceeds collected by the surviving partner exceed the amounts required to be paid by him as such purchase price during the first two years of this partnership, the excess shall be retained by the surviving partner. However, in the event that after the second year of said partnership DEAN A. ROWLEY becomes a full partner in said partnership, then and in that event the value of the deceased partner's interest in said partnership shall be not less than the proceeds of the Life Insurance purchased on his life by the surviving partner under this Agreement."

The agreement referred to a policy issued by Prudential Life Insurance Company of America on 6 August 1956 insuring the life of Dr. Tom in the amount of $32,000, the beneficiary of which was Dr. Dean. Subsequently, however, a new policy in the amount of $50,000, with a provision for double indemnity, was taken out on the

**420**

life of Dr. Tom by Dr. Dean. A corresponding policy was taken out on the life of Dr. Dean by Dr. Tom. This new policy was issued by the New York Life Insurance Company on 8 February 1962. It is the proceeds of this policy that are the subject of this suit.

After the death of Dr. Tom, the original of the purchase and sale agreement was found in the general partnership files. A copy of the agreement was found by Harold H. Kuhse, Mrs. Tom Rowley's attorney, in the office of the doctors' accountants. Neither of the copies was executed.

The appellee, surviving widow, in her complaint alleged three separate counts: Count 1 alleged an agreement between the two parties with no specification as to whether the agreement was written or oral; Count 2 was based on a constructive trust theory and this count was disposed of by directed verdict; Count 3 sought an accounting to determine the value of Dr. Tom's interest in the surviving partnership. It was the contention of Dr. Dean that a purchase and sale agreement never existed between the two doctors, and that the insurance was purchased to help the surviving partner withstand the high overhead to be incurred by the survivor as a result of the death of the other partner. It was also the contention of Dr. Dean that the surviving widow had only an interest in one-half of the physical assets of the partnership and accounts receivable, and that she had no interest in any good will.

The matter was tried before a jury and the question presented for review is whether there was sufficient evidence presented at trial to support the giving of instructions by the trial court that would permit the jury to return a verdict for the appellee if the jury believed that a purchase and sale agreement existed between Dr. Dean Rowley and Dr. Thomas Rowley.

The instruction which the appellant alleges was not supported by the evidence reads as follows:

"If you find from a preponderance of the evidence that both of the physicians signed a copy of the document in evidence as Exhibit 3 and thereafter listed thereon the insurance policies which were in effect at the time of the death of Thomas O. Rowley, you must return a verdict for the plaintiff.

"If you find from a preponderance of the evidence that they did not actually sign the agreement, but you further find from a preponderance of the evidence that they agreed to be bound by the terms of Exhibit 3 and you further find that they purchased the policies of insurance in question for the purpose of carrying out of that agreement, you are instructed to find in favor of the plaintiff."

■ Concerning the sufficiency of the evidence to give the above quoted instruction, our Court has stated:

"In this state, it is reversible error to give an instruction on a legal theory as to which there is not substantial evidence, (citations omitted) and it is equally reversible error not to give an instruction on a legal theory within the issues of the case which is supported by substantial evidence." Newman v. Piazza, 6 Ariz.App. 396, 433 P.2d 47, 49 (1967).

Dr. Dean testified that after the funeral:

"Q When Barbara Rowley, as a new widow, came to the office to go through that desk and get papers, so on, out of that desk, she had to have you unlock the desk so that she could have access to it, is that right?

"A Yes, sir.

"Q And you sat there and watched her go through that desk?

"A I sat there just to provide company.

"Q Whatever reason, Doctor, you sat there while she went through that desk?

"A Yes.

"Q And she turned to you, and she said, 'Dean, where is Tom's copy of the purchase and sale, or buy and sale agreement,' didn't she?

"A I don't recall the exact words.

"Q She said something like that?

"A She might have.

"Q And your answer was, 'I don't know, my copy is with my lawyer.'

"A Well, I can't recall my answer at that point.

"Q Maybe I can help you refresh your memory. I will refer to the deposition, page 33, starting on line 24, proceeding to the next page.

'Q Did she ask where Tom's copy of that agreement was?

'A She could have, I don't remember.

'Q Did you tell her that you had a copy of it and that it was at your lawyer's office?

'A I think I probably did. At least she states that I did, and I wouldn't refute that.'

"Did you make those answers to those questions?

"A Yes, I did."

Mr. Cavanagh, the attorney who drew up the instrument, testified that he had observed the purchase and sale agreement on two occasions, and that there were signatures on the agreement. His testimony was as follows:

"Q When was the last time you saw it? Now, we are not talking about the occasion to which we have directed our testimony, but the last time you saw it?

"A The last time I saw it was right before I left the practice of law for a couple of years, which would be sometime between February and June of 1962.

"Q And at that time did the document to which we have been referring still have the same writing on it?

"A Yes, sir. And at that time Dr. Dean and Dr. Tom and myself were present.

"Q All three of you present?

"A Yes, sir.

"Q And you were discussing the contents of the document?

"A Yes, sir.

"Q Will you please describe the writing which you saw on the document the first occasion which we are talking about, back in the old office.

\* \* \* \* \* \*

"Q What did you see, insofar as any signatures. Did you see any signatures?

"A Yes, I saw Dr. Tom's signature and Dr. Dean's signature.

\* \* \* \* \* \*

"Q You have testified that on the occasion when they were in their old offices you saw a copy of Exhibit 3, and at that time it contained the signatures of Dr. Thomas Rowley and Dean Rowley, is that correct?

"A Yes, sir.

"Q Now, sir, did you at that time observe the Schedule B attached to the document, Schedule B being the list of the insurance policies originally taken out?

"A Yes, sir.

"Q And you observe whether or not there were signatures on the page?

"A There were signatures of both Dr. Tom and Dr. Dean.

"Q On Schedule B?

"A On Schedule B, yes, sir.

\* \* \* \* \* \*

"Q Were you, at the time you saw the document on this first occasion, familiar with the signatures of Drs. Tom and Dean Rowley?

"A Yes, sir, I believe so."

The appellee, Dr. Tom's wife, testified that she was aware of the purchase and sale agreement, and attempted to find her husband's copy, after his death, in his desk at the office. While going through his desk she asked Dr. Dean, who was present, "I wonder where Tom's buy and sell agreement is." Dr. Dean's only reply was, "I don't know. Mine is in my attorney's office."

The reviewing court, when weighing the sufficiency of the evidence to justify the giving of a requested instruction, may consider inferences reasonably

**422**

and logically flowing from the evidence. Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071 (1954), Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934 (1961).

The evidence presented by the appellee was sufficient from which it could be found that the parties had intended to enter into a purchase and sale agreement, and that the partners had operated, in the past, under an oral partnership agreement. It reasonably and logically follows that the partners could have been operating under the purchase and sale agreement. The trial court was under a duty to submit to the jury, for their determination, the question of whether the parties agreed to be bound by the agreement as alleged by the appellee or whether the agreement was in fact signed as indicated by the testimony of Mr. Cavanagh. There being enough evidence to support the giving of the instruction the judgment will not be disturbed on appeal.

Judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.